CARAWAY, J.
11 This appeal arises from a dispute concerning the insurer’s refusal to pay collision coverage and liability coverage for property damage caused by the plaintiff insured. The insurer contends that plaintiff failed to renew her automobile insurance policy eight days before her accident. Plaintiff claims that the insurer was negligent in procuring renewal insurance from her and that she was confused concerning a premium payment she had made for her *1030 new vehicle recently added to the policy. After a trial in district court, plaintiff was awarded damages in the amount of $27,589 for the loss of her vehicle and $11,000 for liability payments. It is from this judgment that the insurer appeals. For the following reasons, we affirm the trial court’s judgment.

Facts and Procedural Background

On April 18, 2010, Connie Ward (“Ward”) was driving her new Nissan Alti-ma on Interstate 20 when she sideswiped a car parked on the shoulder of the road. After the accident, Ward made a claim on her insurance policy -with USAgencies Casualty Insurance Company (“USAgen-cies”). Ward received a letter, dated April 22, 2010, that informed her that the effective period for her policy was from October 9, 2010, to April 10, 2010. For this reason, the letter stated that USAgencies would not provide coverage for the April 18 accident. According to USAgencies, the reason for the policy ending on April 10, 2010, was that Ward had failed to renew her policy.
This suit centers around the events that transpired when Ward purchased her Nissan Altima in late March of 2010 at the time that her | ¡¿insurance policy approached its renewal date. Ward had purchased a policy of liability insurance from USAgencies on October 9, 2009. The policy #4763929 covered liability only and applied to a 2005 Cadillac and a 2002 Saturn. Ward paid the entire premium for the 6-month policy in October 2009. The price she paid for the liability insurance on both vehicles was $501.
On March 5, 2010, USAgencies sent Ward an “OFFER TO RENEW.” The letter notified Ward that the policy would expire on April 10, 2010, at 12:01 a.m. The letter informed her that the policy would expire unless she were to pay the entire premium of $447 or make an initial payment of $134.19 and finance the remainder of the policy premium allowing her to pay $73.03 per month for five months. The offer stated that she must complete and return an enclosed premium finance agreement with any down payment. It further stated, “If we do not receive the completed Premium Finance Agreement with your down payment, you will be required to pay the entire policy premium immediately or your policy will cancel for nonpayment of premiums.”
Ward took no action regarding the renewal offer. Ward initially denied ever receiving the renewal offer, but when pressed on the issue in her testimony, she admitted that she provided it to her attorney after the accident.
On March 25, 2010, Ward traded in her Cadillac for the Nissan Altima. In order to obtain financing, Ward was required to insure the car with collision and comprehensive coverage prior to leaving the dealership. While at the dealership, Ward placed a call with the 1-800 number |3for USAgencies to insure the new Nissan Alti-ma. Ward obtained insurance over the phone for the Nissan Altima with an unknown insurance agent. In placing the insurance, the agent had made an endorsement on the existing policy to replace the Cadillac with the Nissan Altima. Increased policy coverage was included for comprehensive and collision coverage only for the Nissan Altima.
USAgencies introduced at trial a new, amended declarations page for the policy which reflects that the premium for insurance on the Nissan alone for the full 6-month period beginning October 9, 2009, would have been $1,273. However, the declarations page reflected for the remaining coverage period from March 25 to April 10, a prorated premium of $102 was due. The declarations page also showed that the 2002 Saturn remained covered for *1031 liability insurance under the policy. The declarations page stated that the policy changes were processed on March 25, 2010, at 12:03 p.m. Ward paid the prorated premium amount of $102 at that time.
Regarding the conversation with the USAgencies agent, Ward testified that she believed that she was obtaining a new insurance policy on the Nissan Altima, rather than adding it to the existing policy. She testified that she intended to obtain insurance beyond April 10, 2010. However, she also testified that she thought she was getting the same insurance that she had on the Cadillac, which she mistakenly thought was fully covered for liability and comprehensive coverage. She believed that the $102 payment was a monthly payment for the new coverage, and she believed that so long as she continued to make these payments, she would continue to have insurance.
|4Ward asked the USAgencies personnel to fax documentation of the policy to her workplace. She also testified that she might have asked the company to send documentation to the dealer. A USAgen-cies receipt was faxed on March 25, 2010, at 12:07 p.m. to an unknown location from an unknown location. The receipt shows a payment of $102 for policy #4763929 issued to Connie Ward with an expiration date of April 10, 2010. Ward testified that she would have read this receipt. Also faxed to an unknown location from an unknown location on March 25, 2010, at 12:07 p.m., were insurance identification cards, one of which was for the Nissan Altima. The insurance card also states that the policy expires on April 10, 2010. At the time of the accident, Ward did not have this insurance card in her vehicle.
Pegg Shoemaker, a USAgencies underwriting analyst, was the only defense witness testifying at the trial. She stated that when a car is added to an insurance policy, and when greater coverage is added, a premium is due immediately. In Ward’s case, the amount was $92 plus a $10 agency fee for the remainder of her policy period. She testified that the declarations page for the amended policy and the insurance cards would have been sent to Ward. She testified that the same documents would have been sent to the dealer as well so that they would know that the vehicle is insured prior to its leaving the lot. Shoemaker also testified that in Ward’s case, a new policy was not issued. Rather, only an endorsement was made to add the Nissan Altima to the existing policy. When asked whether USAgencies has a general policy of obtaining renewals, she stated that it did. However, she testified that the agent is expected to take payment only for the transaction |Bthat they are doing at the time, which was an endorsement here to add the Nissan to the existing policy. She stated that an endorsement can be done only for the current term of the policy. When asked whether the agent on the phone would have had access to all of Ward’s policy information’ when adding the Nissan Altima to the policy, Shoemaker confirmed that the agent would have that information. She stated that the information regarding the policy’s expiration on April 10, 2010, would be readily available.
Finally, Ward never received an offer to renew the policy after the addition of the coverage for the Nissan Altima. Both Ward and Shoemaker testified that no such renewal offer was ever sent. The renewal offer that Ward received would have pertained to the Cadillac and the Saturn as set forth in the March 5, 2010 notice.
Ward sued USAgencies on February 4, 2011. She sought damages for her total loss of her Nissan Altima and for $11,000 she paid in a settlement to State Farm (the insurer of the vehicle she sideswiped).
*1032 After trial, the trial judge awarded damages totaling $38,589. The trial judge found that USAgencies had negligently procured the renewal policy on the Nissan Altima. Due to this negligence, Ward was uninsured and suffered these damages. It is from this judgment that USAgencies appeals.

Discussion

USAgencies argues that our statutory provision for insurance policy renewal governs this dispute. We agree. That provision is La. R.S. 22:1266(E) (hereinafter “the Statute”) which provides, in pertinent part, as follows:
|t,E. (1) No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least twenty days advance, notice of its intention not to renew. This Subsection shall not apply:
(a) If the insurer has manifested its willingness to renew.
* -!' *
(c) If the insurer or a company within the same group as the insurer has offered to issue a renewal policy to the named insured.
USAgencies asserts its compliance with the obligations of the Statute. Both its willingness to renew Ward’s policy and an offer for a renewal policy were reflected in USAgencies’ March 5, 2010 “OFFER TO RENEW.” That notification also clearly advised Ward that the policy would expire on April 10, 2010.
In Ray v. Associated Indem. Corp., 373 So.2d 166 (La.1979), the Louisiana Supreme Court examined the issue of policy renewal and the insurer’s obligations under the Statute.[1] The insurer had prevailed in the lower courts on summary judgment despite the insured’s claim that she had not received a notice of the required renewal premium before the end of her 6-month policy. The insurer supported its motion for summary judgment with evidence that its notice of renewal premium was mailed to the insured five weeks before the existing policy would end.
Interpreting the Statute, the court in Ray found that the insurer was obligated to renew the policy unless it mailed or delivered timely notice of its intention not to renew. Likewise, in the situation where the insurer is willing to renew, its statutory duty of renewal is relieved if the insurer 17manifests its willingness to renew. Only then may the policy end if the insured does not respond. “This result obtains because the insurance company, by stating its willingness to renew the policy, gives the insured the option of continuing or terminating coverage.” Id. at 168.
The Ray court concluded:
Therefore, because § E applies despite Ms. LaCour’s failure to pay the renewal premium, it is clear that the insurer was required to manifest its intention to renew the policy in order to avoid the operation of § E and the resulting automatic renewal of the policy.
Id. at 169 (emphasis supplied). The court then reversed the summary judgment upon its determination of a material issue of fact surrounding the insured’s receipt of the insurer’s offer to renew the policy.
In light of Ray, this “automatic renewal of the policy” under the Statute could have occurred in this case despite Ward’s failure to pay a renewal premium. USAgen-cies, however, may avoid this result if its March 5, 2010 “OFFER TO RENEW” manifested its willingness to renew by offering Ward terms of the renewal policy. *1033 Nevertheless, because of USAgencies’ changes to Ward’s policy after March 5, 2010, we find its March offer for a renewal policy insufficient.
On April 10, 2010, the policy which USA-gencies had offered to renew on March 5, 2010, was not the same policy. By April, Ward’s policy included a different vehicle and additional coverage. The required premium in April for renewal was far different from the $447 offer for renewal in March. The record does not clearly show that by April 10, 2010, Ward had ever been apprised of the exact amount of the renewal premium to extend her insurance an additional 6 months.
IsThe “automatic renewal of the policy” obligation recognized in Ray places upon the insurer the duty of informing the insured either that the policy will not be renewed or that the insurer is willing to renew upon the insured’s renewal payment. Ward’s confusion over her $102 payment to USAgencies for coverage on her new vehicle could not be clarified by her reference to the earlier March 5 notice of renewal. The purpose of that notice as required by the Statute was defeated by USAgencies’ allowance of the new coverage on the new vehicle. The new amended policy would automatically renew on April 10 unless a clarified offer for a renewal policy on the Nissan was given to Ward. Because no such notice was given, the policy remained in effect after April 10 and provided Ward coverage for her April 18 accident. Accordingly, the trial court’s judgment is affirmed.

Conclusion

For the foregoing reasons, the ruling the trial court is affirmed. Costs of these proceedings are assessed to appellant.
AFFIRMED.

. In 1979, the Statute was enumerated in the revised statutes as La. R.S. 22:636.1(E). The language reviewed in Ray was the same as the present La. R.S. 22:1266(E)(1)(a). La. R.S. 22:1266(E)(1)(c) was added to the Statute in 1995.